IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ALBERT JOHNSON, JR. and )
LOUIS HOUSEMAN, )
           )
      Plaintiffs, )
           )
vs. )      Case No. 05-4081-JPG
           )
GEOFFREY SMITH, DEBORAH )
GUETTERMAN, DANA ALBRIGHT, )
DAVID JACKSON, CHRISTOPHER )
SMITH, and WATERFRONT SERVICES )
COMPANY, )
           )
      Defendants. )

ORDER

GILBERT, District Judge:

Before the Court are various motions which are discussed below.

I.    Background.

Plaintiffs, past and present vested participants in the Waterfront Services Company Employee Stock Ownership Plan, (ESOP), have sued Waterfront Services Company, (WSC), and five members of WSC's Board of Directors: 1) Geoffrey Smith, (President of WSC and Chairman of the Board), 2) Deborah Guetterman, (Human Resources Administrator), 2) Dana Albright, 4) David Jackson, and 5) Christopher Smith. Defendants Geoffrey Smith, Guetterman, and Albright are also members of the ESOP administrative committee.

Plaintiffs have filed a two-count complaint under the Employee Retirement Income Security Act of 1974, (ERISA), 29 U.S.C. §1001, *et seq.* In Count I, plaintiffs allege that defendants breached their fiduciary duties by failing to act solely in the interests of the ESOP participants and beneficiaries, and by failing to act with the care, skill, prudence, and diligence that prudent persons in a like capacity would use in the conduct of a similar enterprise. Plaintiffs also claim that Geoffrey Smith violated his fiduciary duties under ERISA by engaging in "*per se* prohibited transactions involving the direct or indirect sale or exchange of property and/or the transfer to, or use by or the benefit of, a party in interest of

any assets" of the ESOP, and by dealing the ESOP's assets for his own interests.  In Count

II, under ERISA's equitable relief provision, plaintiffs seek to remove fiduciaries Smith,

(Geoffrey and Christopher), Guetterman, Albright, and Jackson, as well as to appoint an

independent fiduciary to manage the ESOP while this suit is pending.  The parties' various

motions are discussed below.

## II.  Plaintiffs' Discovery Motions.

Federal Rule of Civil Procedure 26(b)(1) allows discovery:

> regarding any matter, not privileged, that is relevant to the claim
> or defense of any party[.] . . . For good cause, the court may
> order discovery of any matter relevant to the subject matter
> involved in the action. Relevant information need not be
> admissible at the trial if the discovery appears reasonably
> calculated to lead to the discovery of admissible evidence.

*Fed.R.Civ.Proc. 26(b)(1).*

### A.  Plaintiffs' Second Motion to Compel and for Sanctions (Docs. 79, 80).

Plaintiffs have filed a second motion to compel seeking information and documents

regarding the following:

1) defendant Geoffrey Smith's: a) salary; b) bonus compensation; c)

deferred compensation; d) ESOP benefits; e) other cash or non-cash

benefits paid, all for the years 1996, 1997, and 1998;

2) employee compensation and benefits, including W-2 forms, that

were paid to the remaining individual defendants during the years 1996,

1997, and 1998;

3) the value of each of the individual defendants' ESOP accounts for

each year ending May 31, 1998 to the present;

4) the amount of the individual defendants' stock and cash

contributions for each plan year ending May 31, 1996 to the present;

5) the annual ESOP allocation reports for years ending May 31, 1997

2

to May 31, 2006.

6) compensation and benefits that were received by Geoff Smith, Deb Guetterman, and Dana Albright from Consolidated Grain and Barge Company (CGB) and WSC from 1998 to the present;

7) Geoff Smith's W-2s and tax returns;

8) preliminary drafts of the individual defendants' key employee letter agreements referenced in Note 11 of the independent auditor's report for the year ending December 31, 2003;

9) the current compensation of all WSC employees.

Upon review of the parties' pleadings and accompanying exhibits, the Court finds that Items 1) through 7) above are discoverable, but that Items 8) and 9) are not. For example, with regard to Item 1), although defendants argue that Geoff Smith provided his own salary and benefit information during his deposition, plaintiffs also seek this information with regard to the other individual defendants. Furthermore, plaintiffs are entitled to obtain and view the supporting documents to either verify or impeach the testimony of Geoff Smith and the other defendants and witnesses at trial. As to Items 2) through 5), the Court finds that plaintiffs' requests are clearly relevant to, and likely to lead to admissible evidence regarding, plaintiffs' claims that the compensation and benefits being received by the individual defendants in their ESOP accounts were excessive compared to the amounts received by the other ESOP participants. With regard to Items 6) and 7), Geoff Smith testified in his deposition that prior to the year 2000 he received part of his income from Consolidated Grain and Barge Company, (CGB), and part from WSC. Accordingly, plaintiffs' requests in this regard are relevant to, and likely to lead to admissible evidence regarding, plaintiffs' claims that the individual defendants were receiving income and benefits from CGB that was hidden

from the WSC Board of Directors, as well as to whether they took advantage of any corporate opportunities at the expense of WSC's employees and its ESOP.

The Court finds, however that Items 8 and 9, (the drafts of the key employee agreements and current compensation of all WSC employees), are not discoverable.  With regard to Item 8), preliminary drafts of such contracts are generally protected by the attorney-client privilege.  See *e.g., Muller v. Walt Disney Productions*, 871 F.Supp. 678, 682 (S.D.N.Y. 1994) (citation omitted) (preliminary drafts of contracts are generally protected by the attorney-client privilege because they reflect client confidences, legal advice, and opinions of attorneys); and *Phillips Electronics N. Am. Corp. v. Universal Electronics*, 892 F.Supp. 108, 110 (D.Del. 1995) (drafts of license agreements are protected by attorney-client privilege because they "incorporate facts the client disclosed to counsel in confidence").  In addition, contrary to plaintiffs' assertions, there is no evidence to suggest that defendants made a disclosure of these drafts in a manner that would amount to a privilege waiver.  With regard to Item 9, (current WSC employees' compensation), the Court finds no relevancy to, nor is this information reasonably calculated to lead to admissible evidence on any of plaintiffs' claims.

Based on the above, plaintiffs' second motion to compel and for sanctions is granted in part and denied in part.  Defendants are ordered to respond to plaintiffs' requests in Items 1) through 7).  Plaintiffs' request for sanctions is denied at this time.

### B.    Plaintiffs' Motion for Protective Order (Doc. 89).

Plaintiffs have filed a motion for a protective order regarding depositions. Specifically, plaintiffs ask the Court to order defendants to limit their questioning regarding the funding of plaintiffs' litigation by the Laborers International Union of North America, ("LIUNA"), to the funding of this particular lawsuit, (i.e., rather than the several other lawsuits that have also been filed).  Upon review, however, the Court finds that defendants'

questioning in this regard is relevant, and is reasonably likely to lead to admissible evidence regarding both the merits of plaintiffs' claims and plaintiffs' credibility at trial. *Fed.R.Civ.Proc. 26.* Accordingly, plaintiffs' motion for a protective order is denied.

### C.   Plaintiffs' Third Motion for Sanctions and to Compel (Doc. 103).

Plaintiffs have filed a third motion to compel seeking to discover:

> 1) all of WSC's check registers and/or check books that reflect activity from January 1, 1999 through December 31, 2005; and
>
> 2) all of the deposit slips reflecting revenues received at a tavern and restaurant allegedly purchased by WSC called, "The Rusty Anchor."

Upon review, the Court finds that the WSC check registers and check books for the above period are relevant and are reasonably likely to lead to admissible evidence, but that the requested Rusty Anchor deposit slips are not. Accordingly, plaintiffs' third motion to compel is granted in part and denied in part. Defendants shall produce WSC's check registers and check books reflecting transactions from January 1, 1999 thru December 31, 2005. Plaintiffs' request for The Rusty Anchor deposit slips is denied. Plaintiffs' request for sanctions is denied at this time.

### III.   Defendant Waterfront Services' Motion to File a Counterclaim (Doc. 98).

Defendant Waterfront Services has filed a motion for leave to file a counterclaim. Specifically, defendants seek to add counterclaims against plaintiffs under § 502(a)(3) of ERISA, § 29 U.S.C. 1132 (a)(3), for liquidating their ESOP balances at allegedly inflated values. For the reasons stated in plaintiffs' memorandum in opposition, (i.e., the motion is untimely, WSC lacks standing, and ERISA provides no such relief), defendants' motion for leave to file a counterclaim is denied.

IV.     <u>Summary</u>.

Based on the above, plaintiffs' second motion to compel, (Doc. 79), is **GRANTED IN PART** and **DENIED IN PART.**  Plaintiffs' second motion to compel, (Doc. 80), is duplicative of Document Number 79, and is therefore **STRICKEN**.  (Plaintiffs' Document Number 99 that has been filed as a reply regarding Document Number 80 is deemed to be a reply regarding Document Number 79).   Plaintiffs' motion for a discovery phone conference, (Doc. 81), is **MOOT**.  Plaintiffs' motion for a protective order and defendants' motion for leave to file a counterclaim, (Docs. 89, 98), are **DENIED**. Plaintiffs' third motion to compel, (Doc. 103), is **GRANTED IN PART** and **DENIED IN PART.**  Defendants' motion for leave to file excess pages, (Doc. 121), is **MOOT**.  Defendants are **ORDERED** to produce all information requested by plaintiffs' in accordance with this Order **on or before January 31, 2007.**

   **IT IS SO ORDERED**

   **DATED:**  January 18, 2007.

                                                        *s/ J. Phil Gilbert*
                                                        **DISTRICT JUDGE**

6